WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| National Fire Insurance Company of Hartford, et al., <br><br> Plaintiffs, <br><br> v. <br><br> James River Insurance, et al., <br><br> Defendants. | No. CV-14-00765-PHX-JAT <br><br> **ORDER** |

Pending before the Court is Plaintiffs National Fire Insurance Company of Hartford ("National Fire") and Sigma Contracting, Inc. ("Sigma")s' motion for reconsideration, (Doc. 54), of this Court's February 16, 2016, Order granting in part and denying in part Plaintiffs' motion for summary judgment.[1] (Doc. 51). Having considered the parties' filings, the Court now rules on the motion.

**I.**

On February 16, 2016, the Court issued an Order that granted in part, and denied in part, Plaintiffs' motion for summary judgment. (Doc. 51). The Court's Order found that Defendant James River Insurance Company ("James River") (1) had a duty to defend Sigma and breached that duty, that (2) James River had no duty to indemnify Sigma for property damage caused by Quik Flush Plumbing ("Quik Flush")'s work because none of

---

[1] The parties filed cross-motions for summary judgment, asking the Court to interpret the same insurance policy. (Doc. 38; Doc. 42). In the interest of brevity, the Court refers only to its adjudication of Plaintiffs' motion.

the damage leading to the underlying lawsuit[2] occurred when the insurance policy was in effect, and (3) that further factual development was necessary to determine how much National Fire should be awarded in equitable contribution from James River for the defense it provided for Sigma in the underlying litigation. (*Id.* at 29).

On March 1, 2016, Plaintiffs filed the pending motion for reconsideration pursuant to Local Rule of Civil Procedure 7.2(g)(1), and assert three grounds for relief: (1) Plaintiffs ask the Court to consider a copy of the settlement that ended the underlying litigation; (2) Plaintiffs assert that the Court clearly erred when it did not find that James River's duty to defend extended to the defense of all plaintiffs in the underlying lawsuit; and (3) Plaintiffs assert that the Court clearly erred when it granted National Fire relief under the doctrine of equitable contribution, National Fire's own alternative argument, that the Court should not have reached. (Doc. 54 at 6).

## II.

LRCiv. 7.2(g)(2) allows a party to file a motion for reconsideration within fourteen days of the filing of the Order that is the subject of the motion. "[A]bsent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence," the Court "will ordinarily deny a motion for reconsideration."[3] LRCiv. 7.2(g)(1); *see also Kona Enters. v. Estate of*

---

[2] On October 2, 2009, four tenants, collectively the Knuth tenants, filed suit against Alta Mesa & McKellips, LLC ("Alta Mesa"), the entity constructing a shopping center in Mesa, Arizona, for damages related to faulty plumbing. See *Knuth, et al v. Alta Mesa & McKellips, LLC*, et al., No. CV-09-031043 (Ariz. Super. Ct. Oct. 2, 2009). The Court detailed in full the relationship between the Knuth lawsuit and the instant matter in its February 16, 2016, Order. (Doc. 51).

[3] *See Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003) (finding that a motion for reconsideration will be granted under this district's local rules where "(1) [t]here are material differences in fact or law from that presented to the Court and, at the time of the Court's decision, the party moving for reconsideration could not have known of the factual or legal differences through reasonable diligence; (2) [t]here are new material facts that happened after the Court's decision; (3) [t]here has been a change in the law that was decided or enacted after the

*Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting *389 Orange Street Partners*, 179 F.3d 656, 665 (9th Cir. 1999)) (noting that "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law"). Reconsideration entails "an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Id.* (citation omitted). A motion for reconsideration, therefore, "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation," *Guillen v. Thompson*, 2010 U.S. Dist. LEXIS 39591, at *10 (D. Ariz. March 26, 2010) (citation omitted), and it may not "repeat any argument previously made in support of or in opposition to a motion." *Id.* (citing *Motorola*, 215 F.R.D. at 586).

### III.

As noted *supra*, Plaintiffs have set forth three grounds for reconsideration of the Court's February 16, 2016, Order. The Court will first address the issue of whether James River had the duty to defend the entirety of the underlying suit and the issue of equitable contribution together. The Court will then address the proffered settlement agreement.

**A.     James River's Duty to Defend Sigma as an Additional Insured**

Plaintiffs argue that the Court erred when it found that James River had a duty to defend Sigma from the claims asserted by the plaintiff EJ's in the underlying lawsuit, but not from the claims of the other plaintiffs in the suit. (Doc. 54 at 6). The Court acknowledges that clarification is appropriate.

It is undisputed that James River provided one year of coverage for Sigma as an additional insured for plumbing work carried out by Quik Flush. (Doc. 39 at 2). This

---

Court's decision; or (4) [t]he movant makes a convincing showing that the Court failed to consider material facts that were presented to the Court before the Court's decision").

1   policy covered Quik Flush and Sigma from February 11, 2007, to February 11, 2008. The
2   record further establishes that National Fire insured Sigma with a commercial general
3   liability ("CGL") policy from December 31, 2007, to December 31, 2009. (Doc. 43 at 1).
4   National Fire's CGL provided that the "insurance is primary except when," among other
5   exceptions, there is "[a]ny other primary insurance available to [Sigma] covering liability
6   for damages arising out of the premises or operations, or the products and completed
7   operations, for which you have been added as an additional insured by attachment of an
8   endorsement." (Doc. 43-1 at 20-21). As noted *supra*, James River's policy issued to Quik
9   Flush named Sigma as an additional insured.

Under Arizona law, the "occurrence" that triggered coverage was "the point at which damage materialized," for the four tenants in the underlying lawsuit. *Nat'l Fire Ins. Co. v. James River Ins.*, 2016 U.S. Dist. LEXIS 19076, at *18-20 (D. Ariz. Feb. 16, 2016). The record clearly established that the "occurrence" with respect to three plaintiffs in the *Knuth* lawsuit occurred outside of the policy coverage afforded by James River.[4] One tenant, EJ's, experienced an "occurrence" during the policy coverage. This seemingly sets at odds two principles of Arizona law.

On the one hand, the Arizona Court of Appeals has held that "if any claim alleged in the complaint is within the policy's coverage, the insurer has a duty to defend the entire suit, because it is impossible to determine the basis upon which the plaintiff will recover (if any) until the action is completed." *Western Cas. & Sur. Co. v. International Spas of Arizona*, *Inc.*, 634 P.2d 3, 6 (Ariz. Ct. App. 1981). In *Western Casualty*, the court was concerned with substantive causes of action, not claims filed by *separate* plaintiffs that fall outside of the policy's coverage. *See id.* (finding that the complaint "stated in the second and third counts sufficient facts to possibly bring the complaint within the

---

[4] Frader Endeavors, LLC, doing business as ("dba") Kaizen Martial Arts Academy ("Kaizen") began operations in July 2008. (Doc. 39 at 3; Doc. 43-4 at 6-7). Dr. Lynn Knuth, dba Red Mountain Family Chiropractic ("Red Mountain"), signed a lease with Alta Mesa in March 2008, and opened her business on September 22, 2008. (Id.). Treible & Parks, LLC, dba Pizza Fusion ("Pizza Fusion"), "began the build-out of its suite in August of 2008," and ultimately opened its restaurant on November 22, 2008. (Id.).

coverage provided"). More recently, however, the Arizona Court of Appeals has found that where multiple insurers covered an insured for a period of three years, and multiple plaintiffs allege "various occurrences" during the time period, then all three insurers had a duty to defend the insured from "the entire suit." *Regal Homes*, *Inc. v. CNA Ins.*, 171 P.3d 610, 620 (Ariz. Ct. App. 2007) (citations omitted). In *Nucor Corp. v. Employers Ins. Co.*, 296 P.3d 74, 86 (Ariz. Ct. App. 2012), the Court of Appeals, following *Regal Homes*, held that where several plaintiffs "alleged various occurrences spanning many years," and the insured had retained several insurance providers, "[e]ach of [the insured's] insurers therefore would have been required to provide a complete defense for the claims filed against [the insured]." These cases suggest that even where several plaintiffs, joined in a single lawsuit, allege claims that fall outside of the coverage provided by a primary insurer, so long as one plaintiff's claim falls within the coverage period, that insurer has the "duty to defend the entire suit."

On the other hand, the Arizona Supreme Court has held that "there is no absolute duty to defend" an insured, regardless of the claims alleged. *Kepner v. Western Fire Ins. Co.*, 509 P.2d 222, 224 (Ariz. 1973); *see also U.S. Fidelity & Guar. Corp. v. Advance Roofing & Supply Co.*, *Inc.*, 788 P.2d 1227, 1231 (Ariz. Ct. App. 1989) (describing *Kepner* as "[t]he leading Arizona decision relating to an insurer's duty to defend"). Rather, "generally," where "the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy," then "the insurer is obligated to assume defense of the action, but if the alleged facts fail to bring the case within the policy coverage," then "the insurer is free of such obligation." *Id.* (citations omitted); *see also Quihuis v. State Farm Mut. Auto. Ins. Co.*, 334 P.3d 719, 727 (Ariz. 2014). The Arizona Supreme Court went on to state that "the duty to defend should focus upon the facts rather than upon the allegations of the complaint which may or may not control the ultimate determination of liability," but couched the statement by noting that only in some cases would the pleading not serve as the "the decisive factor in determining whether there exists a duty" to defend. *Kepner*, 509 P.2d at 224. Moreover,

the Arizona Supreme Court has also intimated that the insurer has the option to decline to defend the insured based on factual allegations contained in the complaint, albeit at its own risk. *Quihuis*, 334 P.3d at 729; *Kepner*, 509 P.2d at 332.

Complicating the analysis are the circumstances of the *Knuth* lawsuit. Four separate plaintiffs, all of whom suffered "occurrences" at four different points in time and who were joined permissively pursuant to Arizona Rule of Civil Procedure 20(a), brought a single suit against Alta Mesa. The *Knuth* complaint made clear, and subsequent litigation affirmed, that James River had no duty defend Sigma as an additional insured from claims filed by three of the *Knuth* plaintiffs. To demand that James River defend Sigma from claims asserted by three separate plaintiffs, where the complaint plainly pleads that the "occurrences" do not fall within James River's policy coverage, strikes the Court as somewhat draconian. Nonetheless, the Court must hew to the Arizona Court of Appeals pronouncement in *Regal Homes* and *Nucor Corp.* In *Regal Homes*, the builder of a residential community was sued by eight homeowners. 171 P.3d at 612. The homeowner "plaintiffs alleged various occurrences during [a] four-year period." *Id.* at 620. During these four years, Regal obtained CGL insurance from three separate insurance providers. One insurance provider was a primary insurer of Regal for one year, while two other insurance companies were co-primary providers for a three year period.[5] *Id.* at 612. The panel held that "[a]ll three primary insurers of Regal . . . had a duty to defend Regal against the claims in the [underlying] litigation," because "if any claim alleged in the complaint is within the policy's coverage, the insurer has a duty to defend the entire suit." *Id.* at 620 (citation omitted). Thus, "even though [one insurer] covered Regal for only one year while [the other insurance companies] provided three years of primary coverage, each had the duty to defend the entirety of the action." *Id.*

The panel's language in *Regal Homes* strongly supports the conclusion that the

---

[5] The panel in *Regal Homes* found that the two companies insuring Regal from 1996-1998 had "mutually repugnant" other insurance provisions that "must be disregarded," rendering these two insurance companies co-primary providers. 171 P.3d at 619.

- 6 -

1  duty to "defend the entire suit," *Western Cas. & Sur. Co.*, 634 P.2d at 6, is not tied to the
2  *claims* asserted by a plaintiff, but to *all claims* asserted by *all plaintiffs*. *See also Nucor*
3  *Corp.*, 296 P.3d at 86 (interpreting *Regal Homes* to find that each of the insured's
4  insurers had a duty to defend the insured from the entirety of a suit alleging "various
5  occurrences spanning many years").

6  Here, James River was the primary insurance provider for Sigma as an additional
7  insured for a time period that covered the "occurrence" leading to plaintiff EJ's claims in
8  the underlying *Knuth* lawsuit. Accordingly, under Arizona law, James River had the duty
9  to defend the entirety of the underlying lawsuit, to include claims asserted by the *Knuth*
10  plaintiffs who could not tie their "occurrences" to a point in time at which James River
11  provided coverage to Quik Flush and Sigma as an additional insured.

12  The Court's analysis continues, however. James River provided primary, non-
13  contributory insurance to Sigma as an additional insured from February 11, 2007, to
14  February 11, 2008. National Fire provided a CGL policy for Sigma from December 31,
15  2007, to December 31, 2009. (Doc. 43 at 1). From December 31, 2007, to February 11,
16  2008, National Fire provided excess insurance coverage for Sigma in relation to work
17  carried out by Quik Flush pursuant to a provision in National Fire's CGL policy. (Doc.
18  43-1 at 20-21). Three plaintiffs in the *Knuth* lawsuit tied their claims to occurrences in
19  March 2008, July 2008, and September 2008, (Doc. 43-4 at 6-7), all outside of the
20  coverage period provided by James River's policy. National Fire, with respect to
21  occurrences that took place after February 12, 2008, could no longer rely on the "excess
22  insurance" provision in its CGL with respect to Quik Flush's work, because there was no
23  longer any other primary insurance available—that the Court is aware of—to cover
24  Sigma via an additional insured endorsement. (Doc. 43-1 at 21). Thus, absent another
25  primary insurer for Sigma, National Fire became a primary insurer that would cover
26  Sigma for "property damage" that was caused by an "occurrence."[6] (Doc. 43-1 at 12;

---

[6] Plaintiffs argue that "[a]ll of the plaintiffs in the underlying case were damaged because of work performed by Quik Flush" and that "[a]ll of that work was performed during James River's policy period" and that "Quik Flush agreed in writing that James

- 7 -

Doc. 43-2 at 7). By extension, National Fire was the primary insurer responsible for defending Sigma from claims asserted by *Knuth* tenants that did not fall within James River's policy coverage period. And, under *Regal Homes*, 171 P.3d at 620, National Fire also had a duty to defend Sigma from the entirety of the *Knuth* lawsuit.

Plaintiffs have failed to present case law suggesting that James River's duty to defend Sigma from *Knuth* plaintiff EJ's claims (and, by extension, the entire suit), obviates the duty to defend of a separate insurer that provided primary coverage for a period of time that covers claims made by three other *Knuth* plaintiffs.[7] Based on the record before it, Sigma was insured by two primary insurers covering from February 11, 2007 – December 31, 2009. National Fire acted as an excess coverage provider when James River's insurance was in effect. After James River's policy terminated, National Fire became a primary insurer for "occurrences" that caused property damage, and could no longer rely on the "excess insurance" provision included in its CGL.

The result is that two insurance providers were responsible for defending Sigma against the Third-Party Complaint stemming from the underlying *Knuth* litigation. Sigma tendered a defense to the entirety of the Third-Party Complaint, which James River refused, in error. Based on Arizona law, equitable contribution is the most appropriate vehicle to redress the extra defense provided by National Fire to Sigma. Equitable contribution permits one insurance company to "compel contribution for a share of the

---

River, and not National Fire, would insure Sigma for liability arising out of Quik Flush's work." (Doc. 62 at 3). "A motion for reconsideration should not be used to ask a court 'to rethink what the court had already thought through—rightly or wrongly.'" *Defenders of Wildlife v. Ballard*, 73 F. Supp. 2d 1094, 1115 (D. Ariz. 1999) (citation omitted). In its prior Order, the Court dedicated substantial thought to determining at what point, under Arizona law, coverage is triggered. *Nat'l Fire Ins. Co.*, 2016 U.S. Dist. LEXIS 19076, at *14-20. The Court concluded that "coverage is determined by the time of the injury or damage," *id.* (citation omitted), and not when the work was carried out by Quik Flush. The Court will not re-think its prior analysis.

[7] "The liability of an insurer under an 'excess insurance' clause arises only after the limits of the primary policy are exhausted." *Transport Indem. Co. v. Carolina Casualty Co.*, 652 P.2d 134, 145 (Ariz. 1982) (citation omitted). But Plaintiffs have not argued persuasively that where National Fire is an excess insurance provider with respect to certain claims, but primary with respect to others, James River must exhaust the entirety of its policy limit with respect to all claims before National Fire must contribute to the defense.

cost of defense from another insurer who had a similar obligation to the same insured but failed to perform it." *National Indem. Co. v. St. Paul Ins. Co.*, 724 P.2d 544, 545 (Ariz. 1986); *see also Navigators Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*, 50 F. Supp. 3d 1186 (D. Ariz. 2014) (noting that for equitable recovery to apply both insurers' policies must "be primary, rather than excess coverage"); *Nucor Corp. v. Employers Ins. Co.*, 296 P.3d 74, 85, 86 (Ariz. Ct. App. 2012) (noting that "[g]enerally, the method of allocating defense costs among insurers is a matter of equitable judicial discretion").

**B.     Consideration of the Settlement Agreement**

Plaintiffs also ask the Court to consider the settlement that ended the underlying *Knuth* lawsuit, seemingly on grounds that it is newly discovered evidence. Plaintiffs argue that the "settlement agreement was not presented to the Court earlier because the agreement was irrelevant," but the Court's "occurrence" ruling in the Order granting in part summary judgment made the agreement relevant. (Doc. 54 at 5-6). The Court is not persuaded. James River's motion for summary judgment explicitly argued that the Court should "separately dismiss all claims for indemnity for the payment of claims that did not arise during James River's policy period or were not viable at the time of settlement." (Doc. 38 at 15-17). At that time, Plaintiffs were aware that James River was relying on the argument that "[a]t the time of the settlement . . . EJ's claims had been dismissed in their entirety" and that "EJ's had no legally-viable claims against Sigma at all . . . that would be covered under James River's policy." (*Id.* at 17). Plaintiffs knew, or should have known, that the settlement agreement was relevant to the pending cross-motions for summary judgment, and have failed to demonstrate that the settlement agreement is newly discovered evidence that "could not have been brought to [the Court's] attention earlier with reasonable diligence." *Kona Enters.*, 229 F.3d at 890.

**IV.**

For the aforementioned reasons,

**IT IS ORDERED** that Plaintiff's motion for reconsideration, (Doc. 54), of the

- 9 -

1 Court's February 16, 2016, Order granting in part and denying in part summary
2 judgment, (Doc. 51), is hereby **DENIED**; however, the Order, (Doc. 51), is clarified to
3 the extent specified above.
4     **IT IS FURTHER ORDERED** that the trial date and related hearings and
5 deadlines are confirmed.
6     Dated this 6th day of May, 2016.

_____
James A. Teilborg
Senior United States District Judge